| | | |
|---|---|---|
| FOX INTERNATIONAL RELATIONS, | : | CIVIL ACTION |
| MICHAEL LISITSA, and NATAN LISITSA | : | |
| Plaintiffs, | : | |
| vs. | : | |
| | : | |
| ERIC  LAUCIUS, MICHAEL KOGAN and | : | |
| DOES I - III | : | NO.  04-5877 |
| Defendants. | : | |

DuBOIS, J.                                                          December 22, 2009

## M E M O R A N D U M

## I.  INTRODUCTION

        This is a securities fraud case in which plaintiffs, Fox International Relations ("Fox") and its two managing partners, Michael and Natan Lisitsa, claim that defendants, Eric Laucius ("Laucius") and Michael Kogan ("Kogan"), violated federal and state securities laws on numerous occasions.  Presently before the Court are (1) plaintiffs' motion for summary judgment in their favor on the claims against Laucius asserted in the Third Amended Complaint, (2) Laucius's motion for summary judgment in his favor on the counterclaims asserted against Michael and Natan Lisitsa, (3) Laucius's motion for sanctions and (4) plaintiffs' motion for default judgment against Kogan.

        For the reasons set forth below, the Court denies plaintiffs' motion seeking summary judgment in their favor on the claims in the Third Amended Complaint and denies Laucius's motion seeking summary seeing judgment in his favor on his counterclaims.

        Because the Court concludes that plaintiffs' evidence is legally insufficient to allow plaintiffs' claims against Laucius to be submitted to a jury, judgment is entered in favor of Laucius and against plaintiffs on those claims.

Plaintiffs' response to Laucius's motion for summary judgment in his favor on his counterclaims against Michael and Natan Lisitsa challenges the sufficiency of the evidence Laucius provides to support those counterclaims. The Court treats this response as a motion for summary judgment against Laucius, grants the motion, and enters judgment in favor of the Lisitsas and against Laucius on those counterclaims.

Laucius's motion for sanctions is denied because he has not established that plaintiffs had no reasonable basis for filing their complaints or subsequent motions. The Court will defer ruling on plaintiffs' motion for a default judgment against Kogan pending an assessment of damages hearing.

## II. FACTUAL BACKGROUND

The facts of this case are far from clearly presented. What follows is taken from the sparse evidentiary record presented by the parties in their respective motions for summary judgment. For plaintiffs, the evidence consists of Laucius's statement to the FBI on March 4, 2003 and Laucius's deposition, taken more than five years later, on May 22, 2008. For Laucius, the evidence consists of a promissory note given to the Lisitsas by Vladimir and Yelena Rader and a partially illegible letter from the U.S. Attorney's office dated November 10, 2003.

Laucius began his career in 1997 as an assistant at a securities brokerage, Jefferson Gersch. (Deposition of Eric Laucius, at 10) (hereinafter "Laucius Dep.") There, Laucius was introduced to Jefferson Gersch's president, Michael Kogan. (Laucius Dep. 12.) Shortly after Laucius began working, Kogan's stockbroker's license was suspended and Jefferson Gersch closed. (Federal Bureau of Investigation Record of Interview with Eric Laucius on March 4, 2003 at 2) (hereinafter "FBI Int."); (Laucius Dep. 12.) Kogan then introduced Laucius to an investor named Lev Ioussofov,

whose $400,000 initial investment helped Laucius establish a brokerage, Penn Financial Group, Inc. ("PFG") (FBI Int. 3); (Laucius Dep.11-12, 29,59, 63.)

PFG and Kogan each maintained offices at 261 Old York Road in Jenkintown, Pennsylvania, PFG in suite 633 and Kogan across the hall in suite 621 (Laucius Dep. 15, 16); (FBI Int. 5.)   The close physical proximity between the offices of Kogan and PFG helped to facilitate an ill-defined professional relationship.  Kogan maintained direct control over at least five active accounts at PFG, including an account for "Kogan and Company" and an account for his wife, Tanya Kogan.  (FBI Int. 3); (Laucius Dep. 48.)  Kogan also served as a patron of PFG, feeding client referrals to the brokerage and serving as the communications link between PFG and these clients.  (FBI Int. 2, 3.) One of the largest accounts referred to PFG by Kogan was Fox International, owned by Michael Lisitsa.  (Id. at 4.)

PFG used software provided by its clearing broker, Fiserv Securities, Inc. ("Fiserv"), to maintain and perform transactions in its customers' accounts. (Id. at 5.)  Although Laucius was aware that Kogan no longer had a stockbroker's license, (FBI Int. at 2); (Laucius Dep. 79), Laucius gave this software and the access password to Kogan so that Kogan could perform trades in PFG's client accounts (FBI Int. at 2, 3, 5,8, 10, 11.)  PFG's computer technician, Souren Soumbatov, (Laucius Dep. 18), even set up a network connection to enable Kogan to access Fiserv from his office in suite 621, (FBI Int. 5, 9).   Laucius never asked if Kogan had a power of attorney to trade in client accounts. (FBI Int. 3, 12.)

In addition, Laucius told the FBI he allowed Kogan to sign Laucius's name to journal entries in client accounts. (FBI Int. at 2.)   When there was a problem with an account, Laucius would turn to Kogan for answers.  (Id. at 1.)  Because he trusted Kogan, Laucius provided him with keys to

PFG's office and access to PFG's Federal Express Account. (Id. at 9.) Laucius and PFG earned a commission on each trade in one of PFG's client's accounts. (FBI Int. at 8.) Approximately 80% of Laucius's commissions came from trades in Kogan-controlled accounts (Id. at 11.) Nevertheless, according to Laucius, PFG never paid Kogan a salary. (Id. at 8, 14.)

Problems with the complex and amorphous relationship between Kogan and PFG began to emerge in 2002 when one of PFG's clients, Liliya Beyder, called for an explanation of the fact that the reported balance of her account was only ten dollars. (FBI Int. 2); (Laucius Dep. 89.) This was the first step in a series of events that led to PFG's demise. The FBI visited PFG's office in May of 2002. (FBI Int. 13) (Laucius Dep. 101.) After an investigation, Kogan was arrested and charged with mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. He pleaded guilty on September 18, 2003 and was later sentenced to 87 months of imprisonment, 3 years of supervised release, restitution of $5,655,350.18, and a special assessment of $1,800. United States v. Kogan, C.R. No. 03-306 (E.D. Pa. Jan. 22, 2004); see also Kogan v. Lindsay, No. 1:CV - 06-0264, 2006 WL 1548855, at *1 (M.D. Pa. May 31, 2006). The parties dispute Laucius's involvement in the scheme that led to Kogan's arrest and conviction.

Fiserv prepared account statements for PFG. Fiserv would mail these account statements to PFG, where a secretary would place them in binders. (FBI Int. 1.) Laucius reviewed the statements and placed his initials on the first page. (Id.)

Laucius told the FBI that he was aware that Kogan changed the mailing address on certain accounts at PFG and recalled seeing account statements for Kogan clients returned as a result of bad addresses. (Id. at 7, 11.) Laucius also recalled that, sometime in early 2000, PFG received a package containing one hundred pieces of paper colored blue on the top and bottom, but white in the middle.

(FBI Int. 13.)  This paper resembled the type used by Fiserv to print monthly account statements for PFG.  (Id.)  In his deposition, Laucius testified that he first realized false account statements were being sent to PFG's clients when Ms. Beyder and her husband came to the office to discuss the problem with their account, sometime in late 2002.  (Laucius Dep. 90); (FBI Int. 3.)  However, Laucius told the FBI in March, 2003, that, before the meeting with the Beyders, he knew that Ioussoufov had been sent an account statement for an account that did not exist.  (FBI Int. 5-6.)

At his deposition in this case, Laucius invoked his Fifth Amendment right against self-incrimination when asked about Kogan's role in founding PFG, (Laucius Dep. 39), Kogan's use of accounts at PFG, (Id. at 25, 43, 44, 57, 79, 98), Kogan's use of PFG's office space, (Id. at 39, 40-44, 72, 74), Kogan's forgery of account statements (Id. at 56),  PFG's role as Kogan's broker (Id. at 49), and Laucius's own trading activity, (Id. at 34).  Laucius specifically denied that he allowed Kogan to use his signature, (Laucius Dep. 57), or to perform any trades for Fox, (Id. at 50).  Laucius also denied having reviewed the terms of Fox's customer agreement, (Id. at 77), or having ever traded in Fox's account (Id. at 51).  He stated that Kogan received no financial benefit from PFG.  (Id. at 99.)  Laucius also denied having access to two-toned paper that might have been used to forge a Fiserv account statement.  (FBI Int. 7.)  When confronted with letters from PFG to the Beyders about a change of address, Laucius told the FBI that the signature at the bottom of the letter was not his.  (Id. 7.)  Laucius explained that PFG had never had a problem with an account before the Beyders' account problem because Kogan always interfaced directly with clients.  (Id. at 11.)  Laucius also told the FBI that compact discs from Fiserv containing client accounts were missing from his office.  (Id. at 12.)

### III. PROCEDURAL HISTORY

Plaintiffs filed a Third Amended Complaint against Laucius, Kogan, and several other defendants on December 16, 2004. There are eleven claims asserted against Laucius in the Third Amended Complaint – claims six through nine, twelve through sixteen and eighteen and nineteen. Claim six alleges fraud and misrepresentation, claim seven a breach of fiduciary duty, claim eight a violation of 15 U.S.C. § 78j(b), claim nine a violation of 15 U.S.C. § 78t, claim twelve a violation of 70 P.S. § 1-301, claim thirteen a violation of 70 P.S. § 306, claim fourteen a violation of 70 P.S. § 401, claim fifteen a violation of 70 P.S. § 403, claim sixteen a violation of 70 P.S. § 1-501, claim eighteen a violation of §10b of the Securities Exchange Act and Rule 10b-5, and claim nineteen a violation of § 20(a) of that same Act. Because some of plaintiffs' claims arise under the federal securities laws, this court has jurisdiction pursuant to 15 U.S.C. § 78aa and 28 U.S.C. §§ 1331 and 1367.

Laucius filed a motion to dismiss the claims against him on May 23, 2006. The Court granted that motion in part, dismissing claim sixteen, but denied it in all other respects by Memorandum and Order dated March 20, 2007. Shortly thereafter, on May 7, 2007, the Court granted a motion filed by Laucius's counsel to withdraw his representation. Laucius has represented himself ever since.

After the Court ruled on his motion to dismiss, Laucius submitted an Answer, Counterclaims, Cross Claims of Defendant Eric Laucius, and Answer of Cross Claims to the Third Amended Complaint in a facsimile transmission to the Court and to opposing counsel, and by mail to Kogan, on June 28, 2007. Although Laucius provided his Answer to the Court and opposing counsel, he

never filed it in the Clerk's office.[1]   Laucius's counterclaims allege that Michael and Natan Lisitsa conspired with Kogan – whom they knew to be an unregistered broker – to violate unspecified securities laws. Laucius charges that the Lisitsas solicited funds from investors by guaranteeing a rate of return and then took the funds solicited and turned them over to Kogan for investment. According to Laucius, this scheme, not any conduct on his part, caused any damages sustained by Fox.  He seeks indemnification and contribution from the Lisitsas for any damages he is required to pay Fox.

Although not claimed in his Counterclaims, Laucius seeks compensatory and punitive damages for violations of sections 5(a), 5 (c) and 17(a) of the Exchange Act of 1933 and section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 in his motion for summary judgment. In this Memorandum, the Court addresses both Laucius's counterclaims for indemnity and contribution and his counterclaims for compensatory and punitive damages.

Laucius also asserts "counterclaims" and cross-claims against Kogan.  In those cross-claims, he alleges that Kogan was a client of PFG who held himself out as a representative of PFG in order to defraud investors.  Laucius seeks indemnification and contribution from Kogan for any damages he is required to pay to Fox and the Lisitsas.

Finally, Laucius asserts "counterclaims" and "cross-claims" against Marat Tsierelson ("Tsierelson"), a former PFG broker who has never been a party to this action.  Laucius alleges that Tsierelson worked with Kogan to both further Kogan's scheme and to hide the scheme from Laucius. Laucius seeks indemnification and contribution for damages he is required to pay resulting from these actions.

Plaintiffs settled their claims against all defendants except Laucius and Kogan and filed a

---

[1] The Deputy Clerk shall file Laucius's Answer, Counterclaims and Cross-claims.

joint motion to dismiss all claims against the settling defendants on February 19, 2008. The motion was granted by Order dated March 29, 2008.

Kogan has not responded to the Third Amended Complaint. Accordingly, at plaintiffs' request, the Clerk of Court entered default against Kogan on March 9, 2009.

On March 3, 2009, plaintiffs filed a motion for default judgment against Michael Kogan and a motion for summary judgment in their favor on the claims asserted against Laucius.[2] Laucius responded with his own motion for summary judgment on June 2, 2009, in which he seeks summary judgment in his favor on his counterclaims, and a motion for sanctions on June 6, 2009. All of those motions are pending.

## IV. STANDARD OF REVIEW – MOTION FOR SUMMARY JUDGMENT

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). After this examination, a court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the

---

[2] Plaintiffs' Motion for Summary Judgment was filed and docketed twice, once on March 3, 2009 (Document No. 113) and once on March 4, 2009 (Document No. 115). The documents filed on these two dates appear to be identical.

Plaintiff Fox International Relations, Michael Lisitsa and Natan Lisitsa's Response to Eric Laucius Response to Summary Judgment was also field and docketed twice, once on August 24, 2009 (Document No. 134) and once on August 25, 2009 (Document No. 135). These two documents also appear to be identical.

governing law," <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986), and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>  There can be no genuine issue where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322; <u>see</u> <u>also</u> <u>In re Ikon Office Solutions, Inc.</u>, 277 F.3d 658, 666 (3d Cir. 2002) ("Only evidence sufficient to convince a reasonable factfinder to find that all of the elements of [the] prima facie case merits consideration beyond the Rule 56 stage.") (brackets in original) (internal quotation marks omitted)).  In order to be sufficient, the evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).  Where the evidence presented does not meet this threshold, "the plain language of Rule 56(c) mandates the entry of summary judgment." <u>Celotex</u>, 477 U.S. at 322.

## V. DISCUSSION

### A.  The Motions for Summary Judgment

The evidence presented by plaintiffs – statements of defendant Laucius who has been *pro se* for much of the proceedings – is spotty, at best.  Moreover, the procedural posture of the motions for summary judgment adds to the difficulty of this case: each party seeks judgment on his own claims while ignoring the claims of his opponent.

Plaintiffs' motion for summary judgment argues that there are no genuine issues of material fact regarding their claims and that they are entitled to judgment as a matter of law.  Plaintiffs ignore

Laucius's counterclaims in the motion,[3] and Laucius responds to the motion, not by challenging the sufficiency of plaintiffs' evidence, but by reasserting his counterclaims and stating, in conclusory fashion, that there are disputed facts that preclude the granting of plaintiffs' motion for summary judgment on plaintiffs' claims.

With regard to plaintiffs' claims, the Court finds that plaintiffs have failed to present sufficient evidence. In their motion, they state that the evidence provided – presumably all of the evidence favorable to their claims – entitles them to judgment as a matter of law. It does not. To the contrary, plaintiffs' evidence demonstrates a failure to present evidence sufficient to withstand a motion for summary judgment. Accordingly, notwithstanding the fact that Laucius's formal motion does not seek summary judgment on plaintiffs' claims, the Court, *sua sponte*, will enter judgment against plaintiffs on their claims against Laucius. See 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2720 (3d ed. 2004) ("The weight of authority . . . is that summary judgment may be rendered in favor of opposing party even though the opponent has made no formal cross-motion under Rule 56."); see e.g., Orix Credit Alliance, Inc. v. Horten, 965 F. Supp. 481, 484 (S.D.N.Y. 1997) (granting summary judgment to defendant *sua sponte* because the issues were fully briefed, there was no dispute as to the material facts on the claims, and all that remained were pure questions of law).

Laucius's motion for summary judgement seeks judgment in his favor on his counterclaims against the Lisitsas. His motion also ignores plaintiffs' claims. Plaintiffs' responsive briefing

---

[3] Plaintiffs' counsel acknowledged having received Laucius's Answer in his January 29, 2009 status report. Plaintiffs' counsel also questioned Laucius about his counterclaims during Laucius's deposition. Plaintiffs, however, have failed to file a response to Laucius's counterclaims.

challenges the sufficiency of the evidence offered in support of Laucius's motion. The Court will treat this responsive briefing as plaintiffs' motion for summary judgment on Laucius's counterclaims.

The Court agrees with plaintiffs that Laucius has not provided sufficient evidence to support his counterclaims. It thus grants plaintiffs' motion for summary judgment on Laucius's counterclaims, and enters judgment in favor of Michael and Natan Lisitsa and against Laucius on Laucius's counterclaims.

### 1. Plaintiffs' Motion for Summary Judgment

### a. *Nature of the Evidence*

Plaintiffs seek summary judgment in their favor on all of the claims in their Third Amended Complaint. In support, they attach only two pieces of evidence: a record of Laucius's March 4, 2003 interview with the FBI and a transcript of Laucius's deposition.[4] The first piece of evidence mentions the plaintiffs only once and then only to confirm that they did, in fact, have an account at PFG. (FBI Int. 4.) This isolated statement is insufficient to establish a connection between Laucius's conduct and any damages sustained by plaintiffs.

In the second piece of evidence, Laucius either denies the allegations against him or seeks

---

[4] In determining whether a motion for summary judgment should be granted, this Court may consider any material that would be admissible or usable at trial. Stelwagon Mfg. Co. v.Tarmac Roofing Sys., 63 F.3d 1267, 1275 n. 17 (1995); Kohr v. Johns-Manville Corp., 534 F. Supp. 256, 257-58 (E.D. Pa. 1982); see also 10A C. Wright & A. Miller, Federal Practice and Procedure § 2721(3d ed. 2005).

The FBI Form 302 describing the FBI's interview of Eric Laucius is admissible in evidence as an admission of a party opponent and because Laucius explicitly adopted the report in his deposition, (Laucius Dep. 102). Fed. R. Evid. 801.

Federal Rule of Civil Procedure 56(e) allows District Courts to consider depositions in determining a motion for summary judgment.

the protection of the Fifth Amendment. What follows are the only specific references to plaintiffs in the deposition. Laucius stated that he first heard of Fox International Relations from Michael Kogan, who introduced Laucius to Michael Lisitsa. (Laucius Dep. 36-37.) When confronted by plaintiffs' counsel with a Fox account statement issued by PFG, Laucius asserted that the statement was incomplete. (Id. at 49.) Later, when confronted with documents from PFG's website showing Fox's account balances, Laucius responded that one of the balances listed was dated March 3, 2003 – approximately eighteen days after PFG ceased operation. (Id. at 80 - 81.)[5] Laucius also asserted at his deposition that neither he or Kogan ever performed trades for Fox, (Id. at 51), but took the Fifth Amendment when asked if Kogan ever met with Michael Lisitsa at PFG's office, (Id. at 52) and when asked if he considered Kogan to be an affiliate of PFG, (Id. at 79). Laucius denied that anyone from PFG ever reviewed the terms of a customer agreement with Fox. (Id. at 77.) Finally, Laucius asserted the Fifth Amendment when asked if Fox's money was transferred into the "Goldwin-Austen Opportunity Fund." (Id. at 103.)

### b. Elements of the Claims in the Third Amended Complaint

Claim eighteen of the Third Amended Complaint alleges a violation of section 10(b) of the 1934 Securities Exchange Act. That section makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). The rule prescribed by the Commission is Rule 10b-5, which enforces section 10(b) by making it unlawful "for any person to make any untrue statement of a material fact or to omit to state a material

---

[5] These documents – the account statements mentioned and discussed in the deposition – have not been presented to the Court and thus were not considered in ruling on plaintiffs' motion for summary judgment.

fact necessary to make the statements made in light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5(b)).

This rule can be enforced in a private cause of action by investors harmed by the statement, Herman & MacLean v. Huddleston, 459 U.S. 375 (1983), but any plaintiff must prove that defendant (1) made a material misrepresentation or omission, (2) with scienter, meaning a knowing or reckless state of mind, Institutional Investors Group v. Avaya, Inc., 564 F.3d 242, 252 (3d Cir. 2009), (3) in connection with the purchase or sale of securities, (4) that was reasonably relied upon by  plaintiff, (5) with a resulting economic loss that was (6) caused by the material misrepresentation.  See Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341 - 42 (2005).

Claim nineteen of the Third Amended Complaint asserts a violation of section 20(a) of the 1934 Securities Exchange Act, now codified at 15 U.S.C. § 78t(a), which states that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be jointly and severally liable with and to the same extent as such controlled person to any person to whom such controlled person is liable. . . ." To state a claim under this section, plaintiff must show (1) an underlying violation of the securities laws, (2) control by defendant of the primary violator and (3) "culpable participation" by defendant in the securities violation.  See Sharp v. Coopers & Lybrand, 649 F.2d 175, 185 (3d Cir. 1981) *overruled on other grounds by* In re Data Access Sys. Sec. Litig., 843 F.2d 1537 (3d Cir. 1988) (en banc).

The state securities law claims asserted in the Third Amended Complaint share many elements of the federal claims.  In claim twelve, plaintiffs assert a violation of 70 P.S. § 1-301, which makes it "unlawful for any broker-dealer or issuer to employ an agent to represent him in this state

unless the agent is registered under this act."

Claim thirteen avers a claim under 70 P.S. § 1-306, which makes it unlawful for a broker-dealer to employ a person whose registration has been suspended or revoked "without the consent of the commission if such broker-dealer, investment adviser or issue knew, or in the exercise of reasonable care should have known, of such [suspension or revocation] order."

Claim fourteen asserts a violation of 70 P.S. § 1-401, which "is modeled after Rule 10b-5 of the federal securities laws, and requires virtually the same elements of proof," Rosen v. Commc'n Serv. Group, Inc., 155 F. Supp. 2d 310, 321 n. 14 (E.D. Pa. 2001).

Plaintiff's final claim under Pennsylvania state securities law – claim sixteen – is a violation of 70 P.S. § 1-403, which provides that "[n]o broker-dealer or agent shall effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in this State by means of any manipulative, deceptive or other fraudulent scheme, device, or contrivance, fictitious quotation, or in violation of this act or any regulation or order hereunder."

Claim six is a claim of common law fraud, which requires, among other things, a misrepresentation, justifiable reliance and an injury proximately caused by the reliance. See Santana Prods. Inc. v. Bobrick Washroom Equip., Inc. 401 F.3d 123, 136 (3d Cir. 2005) (listing elements of common-law fraud); Petruska v. Gannon Univ., 462 F.3d 294, 310 (3d Cir. 2005) (listing elements of fraudulent misrepresentation) .

Finally, claim seven avers breach of fiduciary duty. Success on this claim requires (1) a confidential relationship, (2) negligence or the intention not to act in good faith and solely for plaintiffs' benefit, (3) injury and (4) a showing that defendant's failure to act solely for plaintiffs' benefit was a real factor in bringing about plaintiffs' injuries. Baker v. Family Credit Counseling

Corp., 440 F. Supp. 2d 392, 414-15 (E.D. Pa. 2006).

### c. Analysis of Evidence Presented in Support of the Above Elements

All of the claims in the Third Amended Complaint except claims twelve and thirteen, share one of the following elements: material misrepresentation, reliance, causation, or damages. Claims twelve and thirteen both require that plaintiffs present evidence showing that Laucius employed Kogan. In their motion for summary judgment, plaintiffs seek judgment in their favor. They thus bear the burden of establishing the existence of the elements essential to their case with something more than a scintilla of evidence. See Celotex, 477 U.S. at 323; Saldana, 260 F.3d 232 (3d Cir. 2001). The Court concludes that they have not met this burden. Construing the evidence in the light most favorable to the plaintiffs, the Court Court, *sua sponte*, concludes that the evidence presented by plaintiffs is insufficient to create an issue for a jury on any of the elements of their claims.

In its March 20, 2007 Memorandum, the Court ruled that plaintiffs' Third Amended Complaint stated a claim against Laucius under Rule 10b-5. Now, plaintiffs seek to support their motion for summary judgment by referring to the allegations in that Third Amended Complaint. (Plfs.' Br. in Supp. Mot. for Summ. J. 9, 11, 12.) This is insufficient. To prevail on the claims in the Third Amended Complaint, plaintiffs must provide evidence showing the existence of, among other things, a material misrepresentation, reasonable reliance, economic loss, and causation. The evidence is generous with generalities – the FBI statement describes a broad scheme to defraud perpetrated by Kogan and the deposition features Laucius's response to the alleged scheme – but stingy with specifics related to the particular plaintiffs. Plaintiffs are not entitled to summary judgment simply because a fraud may have occurred. They must show how the fraud affected them in particular. This, they have not done.

The Third Amended Complaint identifies as misrepresentations the allegedly false investment reports sent by PFG (Third Am. Compl. ¶ 120) and as omissions PFG's alleged failure to disclose the true value of client investment accounts, (Id. ¶ 123). These allegations were first leveled against Laucius by the FBI during the March 4, 2003 interview. Plaintiffs have failed to provide any evidence of a misrepresentation communicated to them or an omission affecting their accounts.

There is no evidence – only allegations – that Lacuius sent Fox a false account statement. The only mention of Fox or the Lisitsas in Laucius's FBI interview is Laucius's statement that their account was one of Kogan's largest. (FBI Int. 4.) Laucius's deposition – the only other piece of evidence submitted by plaintiffs to support summary judgment – is nothing but a dialogue in which plaintiffs accuse Laucius of sending false statements and Laucius denies having had anything to do with Fox or the Lisitsas. (Laucius Dep. 36-37, 40, 49-51, 77-81, 103, 122.) The deposition shows (1) that Laucius first heard of PFG through Michael Kogan, whom Laucius believes is related to the Lisitsas, (Id. at 36-37), (2) Laucius denies having performed trades for Fox, (Id. at 50), (3) Laucius denies that anyone at PFG ever reviewed the terms of a customer agreement with Fox or the Lisitsas, (Id. at 77), (4) Fox received a statement, allegedly from PFG, after PFG stopped operating, (Id. at 80-81), and (5) that Laucius is unsure if any of Fox's money was ever transferred to an account called the "Goldwin-Austen Opportunity Fund," (Id. at 103).

Plaintiffs have constructed their motion for summary judgment on an evidentiary foundation that consists almost entirely of denials and evasions by Laucius. Their allegations against Laucius are not evidence and Laucius's denials obviously do not support their claims. The evidence presented, even when construed in the most favorable light to plaintiffs, fails to establish any

material misrepresentations or omissions involving plaintiffs, which are attributable to Laucius.

The evidence also fails to establish reliance, loss and causation. The FBI statement's single reference to Fox and the Lisitsas establishes none of these elements. (FBI Int. 4.) Nor does plaintiffs' repeated reference to the unsubstantiated claims in their Third Amended Complaint. (Plfs.' Br. in Supp. Mot. for Summ. J. 11, 12.) Although counsel questioning Laucius in his deposition assumes the existence of damages, there is nothing in the deposition showing that Fox or the Lisitsas were, in fact, injured.[6] Laucius's deposition also fails to show how Fox or the Lisitsas could reasonably have relied on any misrepresentation by Laucius or how any misrepresentation by Laucius was an actual or legal cause of any loss. In short, plaintiffs have failed to present evidence establishing these key elements of their claims. Without such evidence, entry of judgment against plaintiffs is appropriate. See Celotex, 477 U.S. at 322.

The same is true of plaintiffs' control liability claim under section 20(a) of the 1934 Securities Exchange Act. The general scheme described in plaintiffs' evidence fails to show that Kogan – whom plaintiffs allege was controlled by Laucius – caused them damages by making misrepresentations on which they could have reasonably relied. Without evidence on each of these elements, summary judgment must be entered against plaintiffs on their control liability claim.

Plaintiffs evidence also fails to establish that Kogan was an employee of PFG, a required element of claims twelve and thirteen. Laucius denied having ever paid Kogan a salary, (Laucius Dep. at 11), and took the Fifth Amendment when asked about Kogan's status at PFG, (Id. at 79). At most, the evidence shows that Laucius permitted Kogan to trade securities through Fiserv. As

---

[6] The Court is not suggesting that, in their motion for summary judgment, plaintiffs were required to provide evidence of damages. They are not. They are, however, required to show, *inter alia*, that Laucius's conduct caused them to sustain damages.

discussed in the Court's March 20, 2007 Memorandum, this is insufficient to establish liability. See Fox Int'l Relations v. Fiserv Sec., 490 F. Supp. 2d 590, 613 (E.D. Pa. 2007).

Plaintiffs attempt to reinforce the flimsy nature of their evidence by noting that the Court may draw a negative inference from Laucius's invocation of the Fifth Amendment during his deposition. See Baxter v. Palmigiano, 425 U.S. 308, 318 (1976). They draw the Court's attention to the fact that Laucius took the Fifth Amendment numerous times, and specifically whenever asked about the precise contours of his relationship with Kogan. (Laucius Dep. 79.) Summary judgment on the basis of any negative inference accorded to Laucius's Fifth Amendment silence raises grave concerns. As the Third Circuit has warned, "[a] trial court must carefully balance the interests of the party claiming the protection against self-incrimination and the adversary's entitlement to equitable treatment. Because the privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side." SEC v. Graystone Nash, Inc., 25 F.3d 187, 192 (3d Cir. 1994).

Plaintiffs have had ample time to obtain the discovery necessary to submit evidence showing the existence of the elements of their case; they do not argue that Laucius's invocation of the Fifth Amendment has made it impossible for them to gather the necessary evidence. In this circumstance, the detriment to Laucius for invoking his constitutional right – entry of judgment in plaintiffs' favor – would be much greater than is necessary to avoid any prejudice plaintiffs may have suffered as a result of Laucius's silence. Moreover, plaintiffs have not provided – and this Court cannot find – any authority for the proposition that a negative inference from Laucius's silence, without more, is sufficient to establish their claims and avoid the entry of judgment against them. The weight of authority, rather, is that judgment for plaintiffs solely because of defendant's assertion of the Fifth

Amendment constitutes a violation of defendant's constitutional right, especially where a negative inference is treated as a substitute for evidence. See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1304 (11th Cir. 2009); Wehling v. Columbia Broad. Sys., 608 F.2d 1084, 1087 (5th Cir. 1979); Campbell v. Gerrans, 592 F.2d 1054, 1058 (9th Cir. 1979).

Accordingly, for the reasons articulated above, the Court enters judgment in favor of Laucius and against plaintiffs on the claims asserted in the Third Amended Complaint.

## 2. Laucius's Motion for Summary Judgment

### a. The Nature of the Evidence

Laucius's counterclaims allege that Michael and Natan Lisitsa ran a "Ponzi" scheme in violation of unspecified securities laws, later identified in his motion for summary judgment as sections 5(a), 5(c) and 17(a) of the 1933 Securities Act and section 10(b) of 1934 Securities Act. (Laucius Mot. for Summ. J. 2.) He seeks compensatory and punitive damages as a remedy for these violations. He also seeks indemnification and contribution from the Lisitsas for any damages he is required to pay Fox. Laucius's Answer, Counterclaims and Cross Claims was sent to this Court and to plaintiffs' counsel in a facsimile transmission on June 28. Plaintiffs have never responded to the counterclaims.

Laucius makes bald accusations of wrongdoing in his counterclaims without producing any relevant evidence. In his response to Plaintiffs' Motion for Summary Judgment, Laucius appended (1) a promissory note given to Vladimir and Yelena Rader by Michael Lisitsa and (2) a letter dated November 10, 2003 from the United States Attorney seeking to adjust the amount of restitution to be paid to Michael Lisitsa by Michael Kogan.

The second paragraph of the letter from the United States attorney is illegible. This Court

asked for a legible copy of this piece of evidence in an August 10, 2009 letter to Laucius and plaintiffs' counsel. In a letter dated August 17, 2009, Laucius responded that his laptop, on which he had stored an electronic copy of the U.S. Attorney's letter and all of his backups, was stolen. In that same letter, Laucius attached an Excel spreadsheet purporting to describe all checks to Fiserv written on behalf of Michael and Natan Lisitsa.

### b. Analysis of Evidence Presented in Support of Laucius's Counterclaims

A plaintiff moving for summary judgment in its favor must, at a minimum, "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 323. To the extent that Laucius seeks indemnity and contribution against the Lisitsas, his motion is denied on the ground that the court has entered judgment in his favor on plaintiffs' claims. Laucius also asserts in his counterclaims that plaintiffs have caused him injury by violating the securities laws, but has provided no evidence of such injury. Where there is no evidence for a jury, there can be no genuine issue of fact for trial and judgment, even against the party filing the motion, is appropriate. See 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2720 (3d ed. 2004; see e.g., Orix Credit Alliance, 965 F. Supp at 484.

The promissory note given to the Raders does not, by itself, establish a violation of the securities laws, much less a Ponzi scheme. The legible portions of the letter from the U.S. Attorney do not establish a violation of the securities laws. Neither does the Excel spreadsheet attached to Laucius's August 17, 2009 letter. These pieces of evidence relate, instead, to the amount of any damages sustained by plaintiffs.

When asked about the basis of his counterclaims during his deposition, Laucius responded

that he "sort of took [it] from Fiserv's response and agreed with it." (Laucius Dep. 120.) When plaintiffs' counsel followed up by asking if Laucius had evidence or personal knowledge of the alleged scheme, Laucius answered that he did not. (Id. at 121.) At most, Laucius stated that he was aware of a similar allegation in a complaint from the Securities Investor Protection Corporation, but admitted that he had not seen the complaint and did not have access to it. (Id.)

Although plaintiffs have not moved for summary judgment against Laucius on the counterclaims, their response to his motion challenges the sufficiency of his evidence. Laucius has failed to present evidence to support his counterclaims. Under those circumstances, the Court treats plaintiffs' response to Laucius's motion as a motion for summary judgment on Laucius's counterclaims, grants the motion, and enters judgment against Laucius on the counterclaims.

### B. Plaintiffs' Claims Against John Does I-III

The Third Amended Complaint alleges that Does I - III were public accounting firms responsible for auditing PFG that violated the law by failing to perform audits in accordance with generally accepted auditing standards. (Third Am. Compl. ¶¶ 16, 118-123.) Specifically, claim seventeen of the Third Amended Complaint alleges a violation of 17 C.F.R. § 240.17a-5, which requires that securities brokers file an annual report to be audited by an independent public accountant. The Doe defendants have not been identified on the record.

The Federal Rules do not directly address the propriety of adding "John Doe" defendants, but the practice has been implicitly sanctioned by the Supreme Court. See Spock v. United States, 464 F. Supp. 510, 518 (S.D.N.Y. 1978) (recognizing that Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971) provides authority for initiating an action against unknown defendants). Thus, "Doe defendants are routinely used as stand-ins for real parties until discovery permits the

intended defendants to be installed." Hindes v. FDIC, 137 F.3d 148, 155 (3d Cir. 1998) (internal quotations omitted). If discovery fails to uncover the Does' identities, they must be dismissed. Id.

Federal Rule of Civil Procedure 21 says that a court, on its own, "may at any time, on just terms, add or drop a party." This case has been active for almost five years and plaintiffs have had ample time to identify Does I - III and assert claims against them. Discovery has been completed and plaintiffs have not sought leave to file a further amended complaint against the Doe defendants, identifying them and asserting claims against them. Accordingly, the Court drops Does I - III from this action.

### C. Plaintiffs' Motion for Default Judgment Against Kogan

Federal Rule of Civil Procedure 55(a) provides that the clerk must enter default "[w]hen a party against whom a judgment for affirmative relief in sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Plaintiffs provided an affidavit affirming that Kogan failed to plead or defend his case and the clerk entered default on March 9, 2009.

The Clerk may enter a default judgment only where plaintiff's claim is not "for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1) & (2). In all other circumstances, plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). The Court concludes that plaintiffs claim against Kogan is not for a sum certain or a sum that can be made certain by computation. An assessment of damages hearing is required and will be scheduled in due course.

### D. Laucius's Cross-Claims Against Kogan and Marat Tsierelson

Laucius asserts cross-claims for contribution and indemnification from Kogan and

Tsierelson. The second page of the facsimile transmission containing Laucius's Answer and Cross-claim states that it has been copied and mailed to Kogan.

Tsierelson has never been made a party to this action and Laucius did not seek leave of the Court to make him one under Federal Rule of Civil Procedure 14. Thus, Laucius's cross-claim against Tsierelson is dismissed.

Kogan is a party to this action and was served with a copy of Laucius's Answer and Cross-claim via mail. However, because judgment has been entered against plaintiffs and in favor of Laucius on the claims asserted in the Third Amended Complaint, Laucius has no basis for claiming contribution or indemnity. Accordingly, judgment is entered in favor of Kogan and against Laucius on Laucius's cross claims for contribution and indemnity.

### E. Laucius's Motion for Sanctions

In a motion for sanctions against plaintiffs' counsel – David Temple of the firm Gallagher, Malloy & Georges – Laucius accuses Temple of making twenty-five defamatory statements during the course of the litigation, in violation of Federal Rule of Civil Procedure 11. Laucius refers to a June 17, 2007 letter listing these alleged violations. Laucius never presented this letter to the Court. Moreover, opposing counsel's brief in opposition to Laucius's motion states that this letter is not in his possession. (Plfs.' Resp. to Mot. for Sanctions 4.)

The first mention of Rule 11 is made in Laucius's June 28, 2007 Answer to plaintiffs' Third Amended Complaint. Paragraph seventeen of the Answer asserts –in very general terms – that plaintiffs violated Rule 11 by filing a frivolous suit, for an improper purpose. (Laucius Answer ¶ 17) (asking the court to impose sanctions "against all parties and individuals involved in this frivolous document [the Third Amended Complaint] and unreasonable claim" and asserting that

plaintiffs are "needlessly increasing the cost or length of litigation"). Paragraph seventeen of Laucius's Answer is referenced in a number of subsequent paragraphs. (Laucius Answer ¶¶ 18 - 20, 30, 37 - 40, 43, 45, 51, 58, 84, 112, 116, 123, 128, 130, 141, 144 - 145, 148, 163 -164, 168.)

Rule 11(b) imposes a duty on an attorney to conduct a reasonable inquiry into the facts before filing a paper with the court. Specifically, an attorney who files a paper with the court certifies that it is not being filed for an improper purpose, that the legal basis of the paper is warranted by existing law or a non-frivolous argument for modifying the law, and that any factual contentions or denials of factual contentions have evidentiary support. Fed. R. Civ. P. 11(b)(1) - (4). "The standard for testing conduct under Rule 11 is reasonableness under the circumstances." Teamsters Local Union No. 430 v. Cement Express Inc., 841 F.2d 66, 68 (3d Cir. 1988).

The Court concludes that plaintiffs' claims were reasonable under the circumstances. Although the Court now rules that the evidence presented is insufficient to survive the entry of judgment against plaintiffs, that ruling does establish that plaintiffs were unreasonable in filing their Third Amended Complaint or their motion for summary judgment. "[L]itigants misuse the Rule when sanctions are sought against a party or counsel whose only sin was being on the unsuccessful side of a ruling or judgment . . . .Substantially more is required." Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987). Because Rule 11 is intended for only exceptional circumstances not present in this case, the Court denies the motion.

## VI. CONCLUSION

Despite the benefit of discovery against Laucius, plaintiffs have failed to present evidence sufficient to warrant the entry of judgment in their favor as sought in the motion for summary judgment. The FBI statement speaks generally about a scheme allegedly perpetrated by Michael

Kogan with only one passing reference to plaintiffs. Laucius's deposition provides a dialogue in which plaintiffs questioned Laucius about the allegations in their Third Amended Complaint and Laucius denied the allegations. Not only is this evidence insufficient to warrant judgment in plaintiffs' favor, it compels the Court, *sua sponte*, to enter judgment against plaintiffs because it is insufficient to create a genuine issue of material fact for a jury to decide. The Court thus enters judgment against Fox, Michael Lisitsa, and Natan Lisitsa and in favor of Laucius on the claims asserted against Laucius in the Third Amended Complaint.

Laucius's counterclaims for compensatory and punitive damages fail because he has presented no evidence to support them. Thus, judgment is entered against Laucius and in favor of the Lisitsas on those counterclaims. Laucius's counterclaims for contribution and indemnity fail in light of the Court's entry of judgment in favor of Laucius and against plaintiffs on plaintiffs' claims.

Because the Court enters judgment in Laucius's favor and against plaintiffs on the claims in the Third Amended Complaint, Laucius has no basis for contribution or indemnity from Kogan. Judgment is thus entered in favor of Michael Kogan and against Laucius on Laucius's cross-claim and "counterclaim" seeking contribution and indemnity from Kogan.

Laucius's "cross-claim" and "counterclaim" against Tsierelson is dismissed because Tsierelson is not a party to this action.

The Court denies Laucius's motion for sanctions because plaintiffs had a reasonable basis for filing their Third Amended Complaint and their motion for summary judgment.

A ruling on plaintiffs' motion for default judgment against Kogan is deferred pending an assessment of damages hearing.

Discovery has been completed. Plaintiffs have had sufficient opportunity to identify Does

I - III and to seek leave to amend their Third Amended Complaint to identify the Does and assert claims against them. They have failed to do so. Thus, the Court now drops the Doe defendants from this action, pursuant to Federal Rule of Civil Procedure 21.

An appropriate Order follows.